UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMANDA V.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CASE NO. 1:20-CV-154-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff, Amanda V. ("Ms. V.") seeks judicial review of the Social Security Commissioner's decision denying her application, dated May 1, 2019, for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. On September 14, 2020, this matter was filed with the Court and this Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, this Court **AFFIRMS** the Commissioner's final decision.

### OVERVIEW OF THE CASE

Ms. V. alleges that she became disabled on December 1, 2014, at the age of 38, due to stage IV papillary thyroid cancer (now in remission), obesity, the removal of a myxoma tumor in her left thigh resulting in thigh pain and meralgia paresthetica of the

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

left side, major depression/mood disorder, and anxiety disorder, along with a host of other impairments. [DE 16 at 728–29]. Ms. V. alleges the worsening of her condition in 2017, stating that her standing, walking, and sitting capabilities greatly diminished that fall. *Id.* at 733. As of December 31, 2019, Ms. V. met the insured status requirements of the Social Security Act.

Ms. V. filed her first claim for DIB on October 5, 2015, which was denied initially and upon reconsideration. The ALJ's decision became the final decision of the Commissioner on February 9, 2017, when the Appeals Council denied Ms. V.'s request for review. This Court then remanded Ms. V.'s claim back to the ALJ, finding that the ALJ failed to build a logical bridge between Ms. V.'s impairments and her residual functional capacity ("RFC"). *Vogelgesang v. Berryhill*, No. 17-CV-146, 2018 WL 2197909 (N.D. Ind., May 14, 2018). On remand, the ALJ again found that Ms. V. was "not disabled" because she is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [DE 16 at 745]. Now ripe before this Court is Ms. V.'s complaint for judicial review of the Commissioner's second unfavorable decision under 42 U.S.C. § 405(g).

**I.    DISABILITY STANDARD**

In order to qualify for DIB or SSI, a claimant must be "disabled" under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her residual functional capacity ("RFC"); and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. § 404.1520; *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## II. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th. Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

4

**III.    ANALYSIS**

Ms. V. makes two challenges to the ALJ's determination of "not disabled." First, Ms. V. alleges that the ALJ erred in failing to incorporate sitting limitations into his RFC findings and otherwise failing to build a logical bridge between the evidence in the record and the RFC. She argues that the ALJ's decision is not supported by substantial evidence due to the ALJ omitting any real discussion of her left thigh ailments stemming from the removal of a tumor. Additionally, Ms. V. argues that the Commissioner did not meet the applicable burden at Step Five through the ALJ's finding that work, consistent with Ms. V's abilities reflected in her RFC, existed in significant numbers in the national economy. As discussed below, the ALJ's decision should be affirmed because it is supported by substantial evidence and the Commissioner met her burden under Step Five.

**A.    RFC Analysis and Failure to Build a Logical Bridge**

Ms. V. argues that the ALJ failed to build a logical bridge between the evidence and his RFC conclusion. The thrust of Ms. V.'s argument is that the ALJ's RFC analysis contained scant discussion of her sitting limitations stemming from the removal of the tumor in her left thigh. [DE 22 at 12]. She alleges that the removal of the tumor in 2012 caused pain persisting from 2014 into March 2017, where an MRI noted postsurgical changes to the thigh. [DE 22 at 8; DE 16 at 1307]. Following the MRI, Ms. V. was diagnosed by a physician with "left thigh pain" and "meralgia paresthetica of the left

5

side."[2] [DE 16 at 1333]. She contends that these thigh ailments cause her pain when sitting, which limits her ability to sit for a long period of time. Ms. V. contends that the ALJ's opinion is "strikingly absent" of discussion of these issues, and thus he fails to build a logical bridge based on substantial evidence. [DE 22 at 12].

The Commissioner's factual findings are rendered conclusive if they are supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson*, 402 U.S. at 401. When the ALJ denies benefits to a claimant, he must "build an accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). To do so, the ALJ must "connect[] the dots between" the "impairments, supported by substantial evidence in the record, and the RFC finding." *Id.*

Here, the ALJ built a logical bridge between the evidence from the record and the RFC finding when he found that Ms. V. could perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). *See also* SSR 83-10, 1983 WL 31251 (describing sedentary work as consisting of approximately six hours of sitting per eight-hour workday). The ALJ discussed the thigh-related evidence underlying the alleged sitting limitations that Ms. V. asserts is "strikingly absent." The ALJ began his discussion of Ms. V.'s left thigh

---

[2] "Meralgia paresthetica is a condition characterized by tingling, numbness and burning pain in your outer thigh. The cause of meralgia paresthetica is compression of the nerve that supplies sensation to the skin surface of your thigh." Meralgia Paresthetica, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/symptoms-causes/syc-20355635.

by noting the diagnoses of pain and paresthesias as well as the post-operative changes stressed by the claimant. [DE 16 at 738]. The ALJ then cited MRI studies of Ms. V.'s thigh in January 2015 and March 2017 that revealed no "significant abnormalities." *Id.* Additionally, the ALJ underscored a March 2017 report from Ms. V.'s surgeon that found "no worrisome physical findings with regard to her left thigh." *Id.* What's more, the ALJ's opinion further highlights the most recent medical observations by Ms. V.'s physicians that describe "normal sensations or loss of sensation in one area . . . normal strength [and] normal gait." [DE 16 at 739]. Lastly, the ALJ found "especially significant" evidence that Ms. V. refused to receive physical therapy treatment or do more than "obtain prescriptions since the alleged onset date" to remedy her alleged left-thigh pain in support of his RFC findings. [DE 16 at 739].

Thus, despite Ms. V.'s assertion to the contrary, the ALJ did discuss her alleged thigh pain in his RFC analysis and thereby connected the dots between the evidence of record and the RFC. As a result, the ALJ both supported his RFC finding, which excluded the sitting limitations Ms. V now seeks, with substantial evidence and built the requisite logical bridge.

    **B.**    **The ALJ's Findings at Step Five**

Additionally, Ms. V. argues that the ALJ did not carry his burden at Step Five when he found that there are a significant number of jobs in the national economy that Ms. V. could perform. The ALJ cited the vocational expert's opinion that Ms. V. could perform the job requirements for document preparers, inspectors, and final assemblers given her age, education, work experience, and RFC. [DE 16 at 745]. Further, the ALJ

7

reported the vocational expert's assertion that 112,000 jobs in those three categories exist nationally. After finding the vocational expert's testimony credible, the ALJ held that the number of jobs that Ms. V could perform does exist in significant numbers in the national economy.

Ms. V. challenges the ALJ's finding that the 112,000 jobs cited by the vocational expert is "significant" as is necessary for the ALJ to meet his burden at Step Five. At Step Five, the burden of proof falls on the Commissioner, through the ALJ, to establish that the claimant, considering her RFC, age, education, and job experience, can perform work that exists in substantial numbers in the national economy. 20 C.F.R. § 404.1520(f)-(g). For claimants "who cannot sit or stand indefinitely, a vocational expert, vocational dictionary, or other appropriate guide or source must be consulted to determine whether there are sufficient jobs in the national economy." *Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996). Courts within this Circuit have generally chosen not to delineate a bright-line test to determine what is a "significant number," but rather have looked to previous cases as a guide. *See, e.g.*, *Moran v. Berryhill*, No. 15-CV-4027, 2017 WL 1073369, at *12 (N.D. Ill. Mar. 20, 2017).

Ms. V. directs the Court's attention to *Sally S. v. Berryhill* No. 18-CV-460, 2019 WL 3335033 (N.D. Ind., July 23, 2019). In *Sally S.*, this Court held that 120,350 jobs was not a significant number because it reflected only 0.080% of jobs in the national economy. *Id.* at *11. The Court reasoned that there was no authority stating 120,350 jobs in the national economy was significant, as previous cases focused on local numbers rather than national numbers. *Id.*

8

In response, the Commissioner asserts that *Sally S.* is an outlier in this Circuit's Step Five jurisprudence. While courts in this Circuit have been clear that they do not wish to create a bright-line rule on what constitutes "significant," it is evident that the Commissioner's assertion that *Sally S.* is a departure from this Circuit's precedent is well-founded. Courts in this Circuit, including the Seventh Circuit itself, have frequently found similar and lower numbers of jobs to be significant. *See, e.g., Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (finding that 140,000 jobs in the national economy is "well above the threshold for significance."); *Primm v. Saul*, 789 F. App'x 539 (7th Cir. 2019) (holding that 110,000 jobs in the national economy was a significant number); *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281 at *17 (N.D. Ill. Dec. 19, 2019) (finding that 40,000 jobs nationally was a significant number); *Simcoe v. Colvin*, 2015 WL 3960964 (S.D. Ind. June 29, 2015) (finding that 32,000 jobs in the national economy would likely be significant); *Iversen v. Berryhill*, No. 16 CV 7337, 2017 WL 1848478 at *5 (N.D. Ill. May 8, 2017) (holding that 30,000 jobs in the nation was a significant number); *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (stating it is "well-established" that 1,000 jobs is significant in reasoning that 4,000 jobs in the region is significant); *Lee v. Sullivan*, 988 F.2d 789 (7th Cir. 1993) (stating that the "contention that 1,400 job positions are not a significant number of jobs is unsupported by case law.").

The ALJ's finding here that 112,000 jobs in the national economy is a significant number falls within the range of 40,000 to 140,000 jobs nationally, which has been determined to be a significant number by other courts in this Circuit. Moreover, Ms. V.

presents no further evidence to establish that the 112,000 jobs available to her is not significant. Thus, the ALJ's Step Five conclusion is supported by substantial evidence and should be affirmed.

**IV.    CONCLUSION**

For the reasons discussed above, the ALJ's RFC and Step Five analyses are both supported by substantial evidence. Accordingly, the Court **AFFIRMS** the decision of the ALJ.

**SO ORDERED** this 7th of March 2022.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge